UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

**ANTONIO L. ABRON,**

        Petitioner,

    v.                                           **Case No. 25-C-1455**
                                                          **Criminal Case No. 24-CR-210**

**UNITED STATES OF AMERICA,**

        Respondent.

---

**ORDER DENYING 28 U.S.C. § 2255 MOTION TO VACATE SENTENCE**

---

       On April 14, 2025, Antonio L. Abron pleaded guilty to one count of distribution of cocaine under 21 U.S.C. § 841(a)(1) and § 841(b)(1)(C) (Count One) and one count of possession of a firearm in furtherance of drug trafficking under 18 U.S.C. § 924(c)(1)(A)(i) (Count Seven). Counts Two (distribution of cocaine), Three (distribution of cocaine), Four (distribution of cocaine), Five (possession of cocaine with the intent to distribute), Six (possession of cocaine with the intent to distribute), and Eight (possession of a firearm by a convicted felon) of his indictment were dismissed. On July 7, 2025, Abron was sentenced to 36 months as to Count One and 60 months as to Count Seven, to run consecutively, for a total term of imprisonment of 96 months. Abron did not appeal his sentence. On September 22, 2025, Abron moved this court to vacate, set aside, or correct his sentence under 28 U.S.C. § 2255. The court directed the Government to respond to Abron's motion; it did so on December 3, 2025. CV Dkt. No. 4.[*] For the below reasons, Abron's motion will be denied.

---

[*] "CV Dkt." refers to the docket in this case. "CR Dkt." refers to the docket of the underlying criminal case, *United States v. Abron*, Case No. 24-CR-210 (E.D. Wis.).

Abron raises two grounds in his motion: (1) his attorney was ineffective because she failed to assert his innocence on the charge of possession of a firearm in furtherance of drug trafficking under 18 U.S.C. § 924(c)(1)(A)(i); and (2) his attorney was ineffective because she failed to file an appeal on Abron's behalf challenging his conviction under that code section. CV Dkt. No. 1 at 2. It is clear from the record before the court that Abron is not entitled to relief.

Had the Government elected to do so, it could have charged Abron with possession of 1.4 kilograms of crack cocaine or cocaine base, which carried a mandatory minimum sentence of ten years in prison, and further increased to fifteen years given his previous conviction for a serious felony drug offense. *See* 21 U.S.C. § 841(b)(1)(A)(iii); CR Dkt. No. 27 at ¶¶ 15–16. With the five-year mandatory consecutive sentence for possession of a firearm in furtherance of a drug trafficking crime, Abron's minimum sentence would have been fifteen years, or twenty if 21 U.S.C. § 851 was utilized. Under the then-applicable Department of Justice charging policy, however, the Government elected to charge Abron with distribution of powder cocaine instead of cocaine base, which reduced the mandatory minimum of his drug offense to five years. Thus, under the original indictment, Abron faced a total mandatory minimum of at least ten years in prison—five years minimum on Count Six (possession of more than 500 grams of cocaine with the intent to distribute) and five years minimum consecutive on Count Seven (possession of a firearm in furtherance of drug trafficking)—if he went to trial.

Abron and the Government entered a plea agreement that further reduced Abron's mandatory minimum prison sentence. The Government agreed to allow Abron to plead guilty to Count One (distribution of cocaine), which had no mandatory minimum, and Count Seven, with its five-year minimum. As a further condition of the plea agreement, however, the defense agreed to recommend a total sentence of eight years in prison, and the Government agreed to cap its

recommendation at eleven years or within the applicable guideline range as determined by the court, whichever was higher. CR Dkt. No. 14 at ¶ 24.

Abron signed the plea agreement on December 17, 2024. *Id.* When it became clear at the change of plea hearing that his retained attorney was confused about the effect of the plea agreement and had mistakenly advised his client, Abron asked that his representation be terminated and a new attorney be appointed. CR Dkt. No. 16. Abron was found to qualify for court-appointed counsel under 18 U.S.C. § 3006A(a), and Attorney Krista Halla-Valdes was appointed and, given the confusion, the Government agreed that it would not withdraw its previous plea offer.

With Attorney Halla-Valdes representing him, Abron signed a new plea agreement with essentially the same terms as the previous one on February 20, 2025, and a second change of plea hearing was held on April 14, 2025. During the change of plea hearing, the court explained each of the elements of each offense of conviction that the Government would have to prove at trial. CR Dkt. No. 38 at 9–13. Importantly, the court explained what is required—and what is not required—to show "possession" in this context, which will be addressed in greater detail below. *Id.* at 11–12. The court concluded that there was a factual basis for accepting Abron's guilty plea as detailed in the plea agreement and set the matter for sentencing. *Id.* at 20–22.

At the sentencing hearing, the court acknowledged that there had been an internal change in policies within the Justice Department regarding sentences for cocaine charges, but that the sentencing guidelines were independent of the Justice Department and internal policies. CR Dkt. No. 39 at 3. Upon consideration of the sentence range under the U.S. Sentencing Guidelines and the 18 U.S.C. § 3553(a)(1) sentencing factors, the court imposed the below-guideline sentence of 96 months recommended by the defense. *Id.* at 24. The court concluded by advising Abron of his

right to appeal and the applicable fourteen-day time limit to do so. *Id.* at 29. The present motion followed a few months later.

To prevail on a claim of ineffective assistance of counsel, a defendant must establish both that his attorney's performance was deficient, and that the deficiency prejudiced him. *Perrone v. United States*, 889 F.3d 898, 908 (7th Cir. 2018) (citing *Strickland v. Washington*, 466 U.S. 668, 687 (1984)). "It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particularized act or omission of counsel was unreasonable." *Strickland*, 466 U.S. at 689. For this reason, the Supreme Court has made clear that "judicial scrutiny of counsel's performance must be highly deferential." *Id.* That is, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance" and "the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Id.* (quoting *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)).

"To establish prejudice in the pleading context, the petitioner must prove that there is a reasonable probability that he would not have pled guilty absent his attorney's deficient conduct." *Hutchings v. United States*, 618 F.3d 693, 697 (7th Cir. 2010) (first citing *Hill v. Lockhart*, 474 U.S. 52, 59 (1985); and then citing *Morales v. Boatwright*, 580 F.3d 653, 663 (7th Cir. 2009)). "To make that showing, the petitioner must do more than simply allege 'that he would have insisted on going to trial'; he must also come forward with objective evidence that he would not have pled guilty." *Id.* (citing *United States v. Cieslowski*, 410 F.3d 353, 359 (7th Cir. 2005)).

The Seventh Circuit has said that "a district court need not hold an evidentiary hearing 'if the petitioner makes allegations that are vague, conclusory, or palpably incredible, rather than

4

detailed and specific.'" *Boulb v. United States*, 818 F.3d 334, 339 (7th Cir. 2016) (quoting *Bruce v. United States*, 256 F.3d 592, 597 (7th Cir. 2001)). Further, "[a] hearing is unnecessary when 'the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief.'" *Id.* (quoting 28 U.S.C. § 2255(b)).

In his motion, Abron first asserts that his attorney provided ineffective assistance by failing to assert Abron's innocence on the charge of possession of a firearm in furtherance of drug trafficking. Abron argues that, because the gun in question was in a storage unit several miles from him during the arrest, it was impossible for the Government to show that he was guilty of "carrying or using" the gun under § 924(c). CV Dkt. No. 1 at 10. Abron also stresses that he never used it or carried it when dealing drugs. Abron raised these same issues during the plea colloquy, however, and the court explained what he was charged with and what the Government needed to prove. CR Dkt. No. 38 at 11–13. When asked if he wanted to continue with his plea or go to trial, Abron stated he had no further questions and proceeded to enter pleas of guilty as to both offenses.

Abron appears to believe he was charged with and pleaded guilty to using or carrying a firearm during and in relation to drug trafficking, as opposed to merely possessing a firearm in furtherance of a drug trafficking crime. He is mistaken. Abron was charged with and pleaded guilty to possessing a firearm in furtherance of a drug trafficking offense. Possessing a firearm "in furtherance of" drug trafficking does not require a showing that the accused had the firearm on his person or even had the firearm nearby when he was arrested. The gun's proximity to drugs or drug profits, whether the gun is loaded, and accessibility of the firearm may be relevant factors when assessing whether a firearm is possessed "in furtherance of" a drug crime. *See United States v. Brown*, 724 F.3d 801, 803 (7th Cir. 2013) (quoting *United States v. Ceballos-Torres*, 218 F.3d 409, 414–15 (5th Cir. 2000)); *see also United States v. Seymour*, 519 F.3d 700, 715 (7th Cir. 2008)

5

("Factors that can be useful in distinguishing between mere possession of a firearm and possession in furtherance of a drug conspiracy include: (1) the type of drug activity that is being conducted; (2) accessibility of the firearm; (3) the type of weapon possessed; (4) whether the weapon is stolen; (5) the status of the possession (legitimate or illegal); (6) whether the gun is loaded; (7) proximity to drugs or drug profits; and (8) the time and circumstances under which the gun is found."); *United States v. Duran*, 407 F.3d 828, 840 (7th Cir. 2005) ("One legal theory that has been advanced, and unanimously accepted, is that a possessed gun can forward a drug-trafficking offense by providing the dealer, his stash or his territory with protection."). For example, in *United States v. Perryman*, a loaded AR-15 rifle, kept three or four steps away from large quantities of fentanyl in the defendant's home, was "possessed" "in furtherance of" the defendant's drug crime. 20 F.4th 1127, 1135–36 (7th Cir. 2021).

Here, Abron's indictment, guilty plea, and stipulation in the plea agreement all recognized that he was charged with "possessing a firearm in furtherance of drug trafficking" under Count Seven. 18 U.S.C. § 924(c)(1)(A). During the plea hearing, the court explained the elements that the Government would be required to prove at trial to obtain a conviction on the firearm count. Abron affirmed his understanding of the charge, that he had spoken with his attorney about the charges, and that he was satisfied with his attorney's explanations and representation. Further, there is ample evidence to support his guilty plea on the firearm count. Abron's storage unit contained over 1.4 kilograms of cocaine base, his gun, and very little else. Abron was not in lawful possession of the firearm—he was already a convicted felon. And the gun was loaded when officers conducted the search of his storage unit. Abron kept his keycard for accessing the storage unit with him. Lastly, he called his girlfriend from jail and solicited assistance in clearing out the storage unit before police could confiscate its contents. Given this record, Abron's claim that his

attorney was ineffective and that he is actually innocent of the crime to which he pleaded guilty clearly fails.

Abron also asserts that his attorney provided ineffective assistance by failing to appeal on Abron's behalf that challenged the conviction under that code section. *Strickland*'s two-part test extends to claims that an attorney was constitutionally ineffective for failing to file a notice of appeal. *Bednarski v. United States*, 481 F.3d 530, 535 (7th Cir. 2007) (citing *Roe v. Flores-Ortega*, 528 U.S. 470, 476–77 (2000)). In cases where a criminal defendant does not instruct his counsel to file an appeal or notice of appeal, "the ineffective assistance of counsel inquiry begins with a determination of whether counsel consulted with the defendant about the possibility of appeal." *Id.* (citing *Flores-Ortega*, 528 U.S. at 478). "Consult" simply means "advising the defendant about the advantages and disadvantages of taking an appeal, and making a reasonable effort to discover the defendant's wishes." *Id.* "If counsel has consulted with the defendant, the question of deficient performance is easily answered: Counsel performs in a professionally unreasonable manner only by failing to follow the defendant's express instructions with respect to an appeal." *Id.* "Counsel has a constitutionally imposed duty to consult with the defendant about an appeal when there is reason to think either (1) that a rational defendant would want to appeal (for example, because there are nonfrivolous grounds for appeal), or (2) that this particular defendant reasonably demonstrated to counsel that he was interested in appealing." *Flores-Ortega*, 528 U.S. at 480. "[A] highly relevant factor in this inquiry will be whether the conviction follows a trial or a guilty plea, both because a guilty plea reduces the scope of potentially appealable issues and because such a plea may indicate that the defendant seeks an end to judicial proceedings. Even in cases when the defendant pleads guilty, the court must consider such factors as whether the defendant

7

received the sentence bargained for as part of the plea and whether the plea expressly reserved or waived some or all appeal rights." *Id.*

Here, Abron does not assert that he instructed his attorney to appeal and that she failed to do so. Instead, he says that he was "ignorant of his right to appeal because the distinction between § 922(g) and § 924(c) was never adequately explained" to him. CV Dkt. No. 1 at 17. Therefore, Abron's argument is that his attorney failed to advise or consult him about an appeal, not that she failed to follow his explicit instructions to appeal. As already discussed, however, the evidence against Abron was extensive. And the deal offered by the Government was favorable, leaving him free to argue for a sentence two years under the mandatory minimum that would otherwise have applied, which is precisely the sentence Abron received. As the Government notes, if Abron is successful and his motion is granted, he would face at least a 15-year minimum.

Under these circumstances, Abron cannot show that a rational defendant would want to appeal or that he reasonably demonstrated to counsel that he was interested in appealing. *See Flores-Ortega*, 528 U.S. at 480. Abron was offered the possibility of—and received—a below-guideline sentence on reduced charges with overwhelming evidence against him. The court explained his right to appeal at sentencing, and Abron did not indicate any interest in appealing until he arrived at prison and began discussing his conviction with others. Nor does it appear that there are any nonfrivolous grounds to appeal. The court cannot conclude his attorney was unreasonable in not consulting with him regarding an appeal. Abron is not entitled to relief on this issue either.

For the reasons stated above, Abron's motion pursuant to 28 U.S.C. § 2255 to vacate, set aside, or correct his sentence is **DENIED**. This case is dismissed. Further, a certificate of appealability is **DENIED**, as the court concludes that its decision is neither incorrect nor debatable

among jurists of reason. *See Slack v. McDaniel*, 529 U.S. 473, 484 (2000). The Clerk is directed to enter judgment accordingly.

Abron is advised that the judgment entered by the Clerk is final. A dissatisfied party may appeal this court's decision to the Court of Appeals for the Seventh Circuit by filing in this court a notice of appeal within 60 days of the entry of judgment. *See* Fed. R. App. P. 3, 4. In the event Abron decides to appeal, he should also request that the court of appeals issue a certificate of appealability. Fed. R. App. P. 22(b).

**SO ORDERED** at Green Bay, Wisconsin this 10th day of December, 2025.

_____
William C. Griesbach
United States District Judge